COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Humphreys, Petty and Decker
Argued at Richmond, Virginia


GEORGE H. SAMARTINO

                                                     OPINION BY
v.      Record No. 1406-14-4      JUDGE ROBERT J. HUMPHREYS
                                                     MARCH 24, 2015

FAIRFAX COUNTY FIRE AND RESCUE


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Michael A. Kernbach (Law Office of Michael A. Kernbach, P.C., on
> brief), for appellant.

> Jamie M Greenzweig, Assistant County Attorney (David P. Bobzien,
> County Attorney; Peter D. Andreoli, Jr., Deputy County Attorney;
> Karen L. Gibbons, Senior Assistant County Attorney; Office of the
> County Attorney, on brief), for appellee.


George H. Samartino ("Samartino") appeals the decision of the Virginia Workers'

Compensation Commission finding that he did not prove total or partial disability resulting from

leukemia entitling him to benefits pursuant to Code § 65.2-402(C).  In this case, the parties do

not disagree that Samartino was a firefighter who had been diagnosed with an occupational

disease.  The only dispute was whether he was *disabled* as a result of his disease.

I.  BACKGROUND

This Court must view the evidence in the light most favorable to the prevailing party

before the commission.  See Crisp v. Brown's Tysons Corner Dodge, Inc., 1 Va. App. 503, 504,

339 S.E.2d 916, 916 (1986).  As such, the evidence viewed in the light most favorable to Fairfax

County Fire and Rescue ("the employer") is as follows.

On August 28, 2013, Samartino filed a claim for benefits alleging an occupational

disease, leukemia, that arose out of and in the course of his employment.  Pursuant to Code

§ 65.2-402(C) he sought temporary total disability benefits for September 11, 2012, September 13, 2012, September 15-19, 2012, October 3, 2012, October 18, 2012, October 19, 2012, October 30, 2012, December 10, 2012, and March 3, 2013, as well as a lifetime award for medical expenses.

During the November 21, 2013 hearing before the deputy commissioner, the parties stipulated that at the time of the hearing Samartino was employed as a firefighter for more than twelve years by Fairfax County Fire and Rescue and his weekly salary was $1,404.97. They also stipulated that Samartino was diagnosed with chronic lymphocytic leukemia on September 18, 2012.

Samartino testified that during the course of his seventeen years of employment as a first responder, he was exposed to fire, smoke, and diesel fumes. In the fall of 2012, he began to feel ill. Samartino explained that the days that he missed work were either because he was not feeling well from the symptoms of his illness or was attending medical appointments related to his treatment. In general, if Samartino needed to leave for a medical appointment, he recorded his time as sick leave.

On September 11, 2012, Samartino took sick leave for twelve hours of his twenty-four-hour shift to attend a doctor's appointment with oncologist Dr. John P. Williams. He worked the remaining twelve hours on that shift. On September 13, 2012, Samartino worked a full twenty-four-hour shift. Dr. Williams indicated in his office records that Samartino presented with lipomas and three lesions. Dr. Williams felt that biopsy of the lesions was appropriate under the circumstances because Samartino was employed as a first responder, which has been associated with increased risk of cancer incidents. He conducted the biopsy and noted that he would call Samartino with the pathology results.

Dr. Williams provided Samartino with a note dated September 14, 2012 stating that Samartino was under his care from September 15 to 19, 2012, and that he was able to return to work on September 20, 2012. On September 15, 2012, Samartino worked twelve hours of his twenty-four-hour shift and took sick leave the remaining twelve hours. Samartino was not on the schedule to work September 16, 17, 18, or 19, 2012. Samartino was officially diagnosed with leukemia on September 18, 2012. He returned to work on September 20, 2012 and worked a full twenty-four-hour shift.

Samartino saw oncologist Dr. Jey A. Maran on October 3, 2012—he again took sick leave for twelve hours of his twenty-four-hour shift and worked twelve hours. Dr. Maran did not restrict his work activities in any way. There is no record whether Samartino worked or took sick leave on October 18, 2012 because that date is not on his time sheet or otherwise addressed in the record. On October 19, 2012, he had a follow-up appointment with Dr. Maran. That same day Samartino worked twelve hours, took twelve hours sick leave, and earned several hours of "comp" time. On October 30, 2012, he did not work his normal twenty-four-hour shift but took sick leave for 19.2 hours and annual leave for 4.8 hours.

Samartino saw Dr. Maran on December 10, 2012 after going to the emergency room the night before complaining of neck pain and a fever. Samartino worked twelve hours of his twenty-four-hour shift and took sick leave the remaining twelve hours. At the December 10, 2012 appointment, Dr. Maran concluded that Samartino's "current symptoms [we]re unrelated to the lymphoma." He did not put any restrictions on Samartino's work activities.

On March 3, 2013, Samartino's time sheet indicated that he took twenty-four hours of sick leave, but there is no corresponding medical record or testimony that explains his absence.

The deputy commissioner issued a decision on January 23, 2014 granting Samartino's claim for benefits. She found that the evidence established that Samartino had been exposed to a

variety of toxins over the course of his seventeen-year career as a firefighter. He was diagnosed with leukemia, and both his treating physicians opined that such exposure was a risk factor in the development of his leukemia. The deputy commissioner found that the employer presented no evidence to the contrary to rebut the statutory presumption of an award and therefore rejected the employer's claim that Samartino did not suffer a disability as a result of his leukemia. She found that Samartino was totally disabled for the dates he claimed and was entitled to the presumption granted pursuant to Code § 65.2-402(C). Samartino was awarded temporary total disability for all the claimed dates and medical benefits for as long as necessary pursuant to Code § 65.2-603.

The commission, with one commissioner dissenting, reversed the deputy commissioner's decision and concluded that Samartino failed to prove a *disability* resulting from his leukemia. The commission concluded that "having considered the evidence in its entirety, we find that the claimant was not disabled as alleged." As the factual basis for this conclusion, the commission pointed to the fact that on many of the days that Samartino claimed he was disabled he worked for twelve hours of his twenty-four-hour shift. The commission acknowledged that Samartino missed work for medical appointments—however that fact alone failed to establish that he was disabled. Drs. Williams and Maran filled out questionnaires prepared by Samartino's counsel that concluded that he was "completely and totally disabled from any and all work as a direct result of his leukemia" on all the claimed dates; however, the commission found that their conclusions were undermined by the fact that Samartino consistently performed his full duties on the days he did not attend medical appointments. Moreover, Dr. Maran's opinion that he was disabled on all the claimed dates as a direct result of his leukemia was directly contradicted by his office notes for Samartino's December 10, 2012 visit where he concluded that Samartino's "current symptoms [we]re unrelated to the lymphoma."

II. ANALYSIS

If supported by credible evidence, the factual findings of the commission are binding on appeal. Code § 65.2-706(A); Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991). "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the [c]ommission's finding." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

Code § 65.2-402, titled "[p]resumption as to death or disability from respiratory disease, hypertension or heart disease, cancer," subsection (C) provides that

> Leukemia . . . causing the death of, or any health condition or impairment resulting in total or partial disability of, any volunteer or salaried firefighter . . . having completed twelve years of continuous service who has a contact with a toxic substance encountered in the line of duty shall be presumed to be an occupational disease, suffered in the line of duty, that is covered by this title, unless such presumption is overcome by a preponderance of competent evidence to the contrary.

"'In order to establish a prima facie case, the claimant need only prove his occupation and his disability from one of the diseases identified by statute. The presumption [then] shifts the burden of going forward with the evidence from the claimant to the employer.'" Town of Purcellville Police v. Bromser-Kloeden, 35 Va. App. 252, 259, 544 S.E.2d 381, 384 (2001) (quoting City of Norfolk v. Lillard, 15 Va. App. 424, 427, 424 S.E.2d 243, 245 (1992)).[1] The purpose of the Code § 65.2-402 presumption "is to establish by law, in the absence of evidence, a causal connection between certain occupations and death or disability resulting from specified diseases." Bass v. City of Richmond Police Dep't, 258 Va. 103, 112, 515 S.E.2d 557, 561

---

[1] Once the claimant makes a prima facie case, in order to overcome the statutory presumption created by Code § 65.2-402 "the employer must show, by a preponderance of the evidence, both that 1) the claimant's disease was not caused by his employment, and 2) there was a non-work-related cause of the disease." Bass v. City of Richmond Police Dep't, 258 Va. 103, 114, 515 S.E.2d 557, 562-63 (1999).

(1999)); see also Lillard, 15 Va. App. at 430, 424 S.E.2d at 247 ("Code § 65.1-47.1 (now § 65.2-402) has long been recognized as a remedial statute, enacted by the legislature to overcome the difficulty that a firefighter would otherwise have in proving causation."). Thus, in order to establish the relevant prima facie case necessary to secure the benefit of the rebuttable presumption in Code § 65.2-402(C), a claimant must prove his occupation as a firefighter *and his resulting disability* from leukemia, or other enumerated disease. See Tomes v. James City Fire, 39 Va. App. 424, 431-32, 573 S.E.2d 312, 316 (2002) (applying Code § 65.2-402(A)).

"'Disability from a disease has been defined as the stage when the disease prevents the employee from performing his work efficiently.'" Id. (quoting Salyer v. Clinchfield Coal Corp., 191 Va. 331, 338, 61 S.E.2d 16, 20 (1950)). Whether a claimant is disabled is a factual finding. See Tumlin v. Goodyear Tire & Rubber, 18 Va. App. 375, 378, 444 S.E.2d 22, 23 (1994). If supported by credible evidence, the factual findings of the commission are binding on appeal. Code § 65.2-706(A); Manassas Ice & Fuel Co., 13 Va. App. at 229, 409 S.E.2d at 826. "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the Commission's finding." Wagner Enters., 12 Va. App. at 894, 407 S.E.2d at 35. Thus, this Court is bound by the commission's factual finding that a claimant is not disabled as a result of his disease if there is credible evidence in the record to support it.

In this case, the parties agree that Samartino was a firefighter that had been diagnosed with leukemia—their only dispute was whether he had a resulting disability from his illness. The commission found that he did not. In making its determination, the commission relied exclusively on an unpublished opinion from this Court, Lipscomb v. City of Lynchburg, No. 2157-13-3, 2014 Va. App. LEXIS 210 (Va. Ct. App. May 27, 2014). In Lipscomb, this Court held that "a claimant must show entitlement to some form of economic indemnity" in order to establish a prima facie case under Code § 65.2-402 . Id. at *18. The Lipscomb holding relied

- 6 -

heavily on the reasoning articulated in an earlier unpublished opinion, <u>Lussen v. City of Roanoke</u> <u>Fire & EMS</u>, No. 1705-03-3, 2003 Va. App. LEXIS 652, at *6 (Va. Ct. App. Dec. 16, 2003), which stated: "Under the terms of Code § 65.2-402, in order for the presumption to apply and to result in an award, a covered claimant must prove [1] the disease and [2] a resulting disability." Although the claimant in <u>Lipscomb</u> provided evidence that he had one of the statutorily listed diseases and that "he was *physically* incapacitated for the three days he was hospitalized, he did not demonstrate any entitlement to economic indemnity for his physical incapacitation." <u>Lipscomb</u>, 2014 Va. App. LEXIS 210, at *19. Moreover, he could not prove that his disease affected his ability to perform his employment duties. <u>Id.</u> at *18-19. Consequently, this Court held that the commission did not err in finding that Lipscomb failed to prove he suffered from a *disability as a result* of his heart disease, and therefore, the presumption in Code § 65.2-402 did not apply. <u>Id.</u> at *18.

Today we clarify our holding in <u>Lipscomb</u>.[2] All that is required to invoke the statutory presumption is proof of the disease and proof of a disability resulting from that disease. A right to economic indemnity is only one factor that a fact finder may consider in determining if a person is disabled as a result of his illness—in other words, whether he has reached "'the stage when the disease prevents the employee from performing his work efficiently.'" <u>Tomes</u>, 39 Va. App. at 431-32, 573 S.E.2d at 316 (quoting <u>Salyer</u>, 191 Va. at 338, 61 S.E.2d at 20). Proof of entitlement to economic indemnity may be used to support a finding that a claimant is disabled, however its absence is not dispositive of a finding that a claimant is not disabled.

Based on the above, we hold that the commission's finding is supported by credible evidence in the record that Samartino's leukemia did not result in a disability because he was still

---

[2] Unpublished opinions of this Court, while having no precedential value, are nevertheless persuasive authority. <u>See</u> <u>Otey v. Commonwealth</u>, 61 Va. App. 346, 351 n.3, 735 S.E.2d 255, 258 n.3 (2012).

capable of performing his full duties. For example, many of the days that he was claiming total disability, he worked for twelve hours and took sick leave for the remaining twelve hours of his twenty-four-hour shift. In sum, the commission did not find that Samartino had established a prima facie case necessary to secure the benefit of the rebuttable presumption in Code § 65.2-402(C) because he failed to prove that his leukemia had reached a stage that prevented him from performing his work efficiently, thereby making him disabled as a result of his disease. Although Samartino points to many facts in the record that may suggest he was disabled by his illness, "[t]he fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the [c]ommission's finding." Wagner Enters., 12 Va. App. at 894, 407 S.E.2d at 35.

At oral argument, Samartino argued that this interpretation of the term disability was incorrect because, if so, future claims under Code § 65.2-402(C) would be forever barred by the expiration of the two-year statute of limitations. It is certainly true that Code § 65.2-406(A)(6) provides that the right to compensation for occupational diseases "shall be forever barred unless a claim is filed with the Commission within" "two years after a diagnosis of the disease is first communicated to the employee." However, we do not agree with Samartino's argument that our decision today bars him from making a claim in the future.

In Tomes, the claimant, also a firefighter, was diagnosed in 1995 with "virtually reversible obstruction," which is "essentially a mild asthma variant of adult onset reversible obstruction airways disease." 39 Va. App. at 427, 573 S.E.2d at 313. However, after his progressively worsening lung disease became disabling, the claimant's lung condition was diagnosed in 2000 as "irreversible chronic pulmonary disease and acute exacerbation of his asthma," and his doctor directed him to not to return to work as an active firefighter for at least two months. Id. at 427, 573 S.E.2d at 314. The claimant filed claims in 1997 and 2000 for

medical benefits. The commission rejected his 1997 claim because it found that he had "sustained no disability as a result of the disease communicated to him on October 30, 1995." Id. at 431, 573 S.E.2d at 315. The commission additionally found that the claimant's 2000 claim was barred by the two-year statute of limitations because it was not a separate claim from his 1997 claim. Id. at 433, 573 S.E.2d at 314. This Court reversed the commission's decision and found that his 2000 claim was not barred by the two-year statute of limitations. "[A]fter failing to prove he had a compensable occupational disease based on his first diagnosis and claim," the claimant "received a second diagnosis and filed a timely second claim pertaining to the same condition, which has since worsened and become compensable." Id. at 434-35, 573 S.E.2d at 317.

Expanding on the rule articulated in Tomes, a claimant's subsequent claim for benefits is not categorically barred by the statute of limitations merely because the claimant filed an unsuccessful earlier claim that arose from the same initial disease. If a claimant receives a second diagnosis as result of a worsening of his initial condition, his second claim may be compensable. Not every occupational disease is immediately disabling, though one may certainly progress to the point that it is. A second claim may be compensable if the illness has reached "*the stage* when the disease prevents the employee from performing his work efficiently.'" Id. at 431-32, 573 S.E.2d at 316 (emphasis added) (quoting Salyer, 191 Va. at 338, 61 S.E.2d at 20).

The statute of limitations for filing a claim is triggered "after a *diagnosis of the disease* is first communicated to the employee." Code § 65.2-406(A)(6) (emphasis added). Therefore, in determining if a second claim is barred by the statute of limitations the question hinges on the meaning of "diagnosis." The plain meaning of diagnosis is "the art or act of identifying a disease from its signs and symptoms." Webster's Third International Dictionary 662 (1993). This

definition is broad enough to encompass not only the identification of the name of the disease but also the identification of the disease's symptomatic progression and impact on quality of life and ability to perform tasks. Like in <u>Tomes</u>, if a patient's symptoms change or worsen, he may be diagnosed with a more severe stage of a disease and consequently trigger the beginning of a new filing period.[3] Construing the statute otherwise would be inconsistent with the remedial purpose of the statute to protect public servants that become ill as a result of their employment. <u>See Lillard</u>, 15 Va. App. at 430, 424 S.E.2d at 247. Reading the statute in such a manner would punish employees who continue to work when they are not yet disabled by their disease because their illness has not yet reached the stage of the disease where they are prevented from performing their work efficiently.

### III. CONCLUSION

Accordingly, because there is credible evidence in the record to support the commission's factual finding that Samartino was not actually disabled by his disease because he could still perform his employment duties, we must affirm the commission's decision.

<u>Affirmed.</u>

---

[3] However, this does not obviate the claimant's duty to notify his employer within two years of when he is first informed that he has an occupational disease because "[i]f an employee receives a communication of a diagnosis of an occupational disease, and does not act on that communication prior to the running of the statute of limitations, then he is barred from filing a later claim based on a later diagnosis." <u>Parris</u>, 2 Va. App. at 225, 343 S.E.2d at 458.