COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Russell and Malveaux
Argued at Norfolk, Virginia

**PUBLISHED**

CITY OF NEWPORT NEWS

OPINION BY
v.      Record No. 1372-19-1      JUDGE WILLIAM G. PETTY
FEBRUARY 25, 2020

JOEY K. KAHIKINA

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Adonica Baine, Senior Assistant City Attorney (City of Newport
News, on briefs), for appellant.

Michael A. Kernbach (Michael A. Kernbach, P.C., on brief), for
appellee.

The City of Newport News (City) argues on appeal that the Workers' Compensation

Commission erred in awarding a police officer benefits for heart disease under the presumption

found in Code § 65.2-402(B). We disagree and affirm the Commission's decision.

## I. BACKGROUND

Under our standard of review, when we consider an appeal from the Commission's

decision, we must view the evidence in the light most favorable to the party who prevailed

before the Commission. K & K Repairs & Const., Inc. v. Endicott, 47 Va. App. 1, 6 (2005).

Here, the prevailing party was claimant Joey K. Kahikina.

The record shows that Kahikina, a police officer with the City of Newport News, began

having heart problems in 2004. In October 2011, after experiencing irregular heartbeats at work,

Kahikina saw cardiologist Dr. Gillen, who diagnosed Kahikina with cardiomyopathy.[1] Dr. Gillen attributed Kahikina's irregular heartbeats to his consumption of a Red Bull, a highly caffeinated beverage, the previous day. Kahikina was kept on "sedentary work only" until a follow-up appointment in January 2012, when Dr. Gillen noted that Kahikina had "no evidence of ischemic heart disease with risk factors which included diabetes, hypertension, and dyslipidemia."[2]

In 2015, Kahikina experienced chest pain and was hospitalized from August 26–28. Dr. Chou, a cardiologist, performed a stress echocardiogram and diagnosed Kahikina with "unstable angina with large area of ischemia," "resting LV dysfunction of unclear significance," "hypertension," "diabetes," and "dyslipidemia." He also performed a cardiac catheterization and implanted a stent. At a follow-up appointment in September 2015, Dr. Chou concluded, "Strictly speaking, I do not have any obvious reason why he cannot return back to work, at least based on the stress test result."

On June 24, 2017, Kahikina went to the emergency room because of chest pain that he experienced after responding to a custody dispute. Dr. Chou performed another cardiac catheterization but did not implant a stent because there was "no new obstructive disease." In his findings on June 26, 2017, Dr. Chou stated,

> I would consider potentially transitioning to a less stressful job responsibility at the police department. There [are] concerns that stress may be contributing to some of his symptoms and may improve with a less stressful situation. I will rediscuss [sic] this with him when I see him back in follow[-]up in about a month.

---

[1] Dr. Gillen subsequently used several phrases to describe Kahikina's cardiomyopathy, including "inappropriate sinus tachycardia . . . hypertensive heart disease with moderate left ventricular dysfunction" in February 2012 and "ben[ign] h[ypertensive] heart disease without heart fail[ure]" and "stable hypertension" in December 2012.

[2] The Commission noted that it received a notification of injury submitted by the City regarding this event. The City, through its carrier, denied benefits because the palpitations were the result of consumption of Red Bull and not as a result of his employment.

Kahikina was kept out of work until his follow-up visit in July 2017. At that time, Dr. Chou listed two circulatory problems: "coronary arteriosclerosis in native artery" and "cardiomyopathy," and he ordered "light duty due to [Kahikina's] ongoing cardiomyopathy and intermittent chest discomfort." He noted on July 12, 2017,

> [Kahikina] is under significant amount[s] of stress per his own report. I explained to him that I do not think this helps his chronic cardiac issues. . . . I did ask him to consider whether [or] not he was willing to go to a less stressful position at work to see what impact this could have on his symptoms. He was open to that idea.

Based on the June 2017 injury, Kahikina filed a *pro se* claim for benefits with the Workers' Compensation Commission on August 8, 2017. He listed "heart/cardiomyopathy" as his injured body part and "cardiomyopathy" as his occupational disease. He listed June 24, 2017, as both the date of injury and the "date doctor told you disease was caused by work." By counsel, Kahikina filed another claim for benefits on February 20, 2018, alleging "heart disease" as his injured body part and "heart disease—2 vessel occlusion" as his occupational disease.

At the hearing before Deputy Commissioner Wilder, evidence showed that Kahikina signed acknowledgements of receipt of Code § 65.2-402 in 2009 and 2010. Kahikina testified that the first time he discussed "work-related stress" with Dr. Chou was after the June 2017 injury.

Deputy Commissioner Wilder found in favor of Kahikina and entered an award for temporary wage benefits and lifetime medical benefits. The Commission affirmed, determining that Kahikina's 2015 diagnosis of coronary artery disease triggered the two-year statute of limitations for claims brought under Code § 65.2-402(B). The Commission found that Kahikina's 2017 claim was "sufficient enough to put the parties on notice of a claim for heart disease" and was therefore timely. It found that Kahikina knew of the presumption as early as 2009, that Kahikina was entitled to invoke the presumption, and that the City failed to rebut the

- 3 -

presumption. Finally, the Commission found that Kahikina "proved disability related to his heart disease."

On appeal to this Court, the City advances two assignments of error. First, "[t]he Commission erred in finding that this occupational disease claim is not barred by the two-year statute of limitations found in Virginia Code § 65.2-406(A)(6)." Second, "[t]he Commission erred in finding that the Claimant was entitled to invoke the presumption of Virginia Code § 65.2-402(B)." For the following reasons, we affirm the decision of the Commission.

## II. ANALYSIS

Code § 65.2-402(B) provides, in pertinent part,

> Hypertension or heart disease causing the death of, or any health condition or impairment resulting in total or partial disability of . . . (iii) members of county, city, or town police departments . . . shall be presumed to be occupational diseases, suffered in the line of duty, that are covered by this title unless such a presumption is overcome by a preponderance of competent evidence to the contrary.

Furthermore, the statute of limitations applicable to this claim provides that a claim must be brought within "two years after a diagnosis of the disease is first communicated to the employee or within five years from the date of the last injurious exposure in employment, whichever first occurs." Code § 65.2-406(A)(6).

### A. The Statute of Limitations

The question of whether a claim is barred by the statute of limitations is a question of law, which this Court reviews *de novo*. Philip Morris USA, Inc. v. Mease, 62 Va. App. 190, 198 (2013). But "[w]hether the information filed with the [C]ommission is sufficient to constitute a timely filed claim for a particular injury is a question of fact [that] . . . will not be disturbed on appeal if supported by credible evidence." Corporate Res. Mgmt. v. Southers, 51 Va. App. 118, 127 (2008) (*en banc*).

- 4 -

The applicable statute of limitations required Kahikina to file within two years from the date that he received a diagnosis of an occupational disease. Code § 65.2-406(A)(6). The City contends that since Kahikina received a copy of the heart-lung presumption in 2009 and 2010, it was incumbent upon him to file for heart disease within two years of his 2011 diagnosis because at that point he knew that he had heart disease and knew about the statute. But this argument misses one critical component of the equation—whether Kahikina knew that his disease was caused by his employment.

This knowledge requirement has been previously addressed by both the Supreme Court and this Court. In Garrison v. Prince William Cty. Bd. of Supervisors, 220 Va. 913, 916 (1980), the claimant was diagnosed with hypertension in 1975. In 1977 he discovered his disease was work-related. Id. The Supreme Court reiterated that the statute of limitations does not begin to run until a claimant "receives a diagnosis that he suffers from an 'occupational disease': one 'arising out of and in the course of the employment.'" Id. at 917 (citation omitted). Therefore, the Court held that the claimant's August 1978 claim for benefits was not time-barred because "[w]hile the claimant was informed in 1975 that he suffered from hypertension, he did not at that time receive a diagnosis that his hypertension arose out of and in the course of employment." Id.

This Court has also recognized that a claimant need not file for benefits until he understands that there is a causal connection between his disease and his work. Via v. Citicorp Mort., 10 Va. App. 572, 577 (1990) (holding the diagnosis of an occupational disease "should be sufficiently clear and understandable to inform the claimant of the nature of his or her condition so that he or she can accurately file a claim to the [Workers' Compensation] Commission"). In Via, this Court discussed Hawks v. Henrico Cty. Sch. Bd., 7 Va. App. 398 (1988), where the statute of limitations began to run upon "a communication to the claimant that he had 'scarring in the lungs' from exposure to metals on his welding job." Id. (quoting Hawks, 7 Va. App. at

402-03). We noted that if a doctor had incorrectly attributed the claimant's symptoms to allergies, then "[o]bviously, the communication of such a diagnosis would not trigger the limitation period for a claim based on the lung disease." Id.

Here, Kahikina found out years after his initial diagnosis that the condition was causally related to his employment as a police officer. The medical records and testimony indicate that Kahikina discovered for the first time on June 24, 2017, that his heart disease was causally related to his employment.[3] In fact, prior to that date Kahikina's doctors attributed his heart disease to his lifestyle choices and other illnesses. According to the record, Dr. Chou's conversation with Kahikina on June 24, 2017, was the first time that Kahikina was informed that work-related stress could be causing his heart disease. Therefore, it was on that date that the statute of limitations began to run, and Kahikina then had two years to file a claim for heart

---

[3] To the extent that the City relies on Owens v. York (Cnty. of) Fire and Rescue, 38 Va. App. 354 (2002), that case is distinguishable. There, the Commission explained that "[a]s found by the Deputy Commissioner, the claimant's testimony regarding his diagnosis of hypertension . . . lacks credibility." Id. at 360. The records showed that the claimant was diagnosed with high blood pressure in 1995 and was prescribed medication for the condition, which contradicted his testimony that he did not know he had hypertension until 1998. Id. at 361. Furthermore, the claimant was aware of "special workers' compensation coverage for hypertension" because he worked as a lobbyist to enact the heart-lung presumption. Id. at 365. Here, by contrast, Kahikina testified that he did not know his employment was a cause of his heart disease until June 2017. The deputy commissioner found Kahikina's testimony to be "credible and accepted," and nothing in the record leads us to question Kahikina's credibility on this point.

disease.  See id.  Kahikina's August 2017 claim was well within the two-year period beginning on June 24, 2017, and it was therefore timely.[4]

The City argues, however, that Kahikina's receipt of a copy of the statute in 2009 and 2010 informed him that heart disease was a compensable occupational disease.  We reject that argument.  Providing Kahikina with a copy of the statute merely served to inform him that the presumption existed—it did nothing to inform Kahikina that a causal link existed between his employment and his diagnosed heart conditions.  That required knowledge was supplied on June 24, 2017, when Dr. Chou told Kahikina that stress from his job could be a contributing factor to his heart disease.  The statute began to run on the date that the causal link was communicated to Kahikina, thereby supplying him with "sufficient notice to be able to file a proper claim for his [heart] disease."  Via, 10 Va. App. at 577.

B.  Causation

The City argues next that Kahikina was not entitled to invoke the presumption because the evidence failed to establish causation.  "The [C]ommission's determination regarding causation is a finding of fact."  Farmington Country Club, Inc. v. Marshall, 47 Va. App. 15, 26

---

[4] The City also argues that Kahikina's 2017 claim form listing cardiomyopathy was untimely because he was diagnosed with that form of heart disease in 2011.  It contends that Kahikina needed to list coronary artery disease instead.  We disagree.  We have previously held a claim form was sufficient when it "identified the employer, the date of the accident, the location of the accident, the injuries that resulted, and stated that [the claimant] had a claim."  Trammel Crow Co. v. Redmond, 12 Va. App. 610, 614 (1991).  Kahikina's August 8, 2017 claim form contained all the above elements. Kahikina was not required to use exact medical terminology on his claim form to describe his heart disease.  Simply listing "heart disease" would have been sufficient, so "cardiomyopathy," a term which refers to heart disease, will likewise suffice.  Code § 65.2-402(B) permits a claimant to recover for "heart disease or hypertension."  Dr. Chou testified that "[c]ardiomyopathy means [a] problem with your heart," and medical records from 2012 reveal that Dr. Gillen considered Kahikina's cardiomyopathy to be a form of heart disease.  Based on the evidence, the Commission found that cardiomyopathy is a form of heart disease.  This finding is supported by the medical records and the testimony, and it is therefore "conclusive and binding upon this Court."  United Airlines v. Hayes, 58 Va. App. 220, 238 (2011).  Because cardiomyopathy is a form of heart disease, the 2017 claim form was sufficient for purposes of the statute of limitations.

(2005). "Decisions of the [C]ommission as to questions of fact are conclusive and binding upon this Court if supported by credible evidence." United Airlines v. Hayes, 58 Va. App. 220, 238 (2011). "In determining whether credible evidence exists to support the [C]ommission's findings of fact, 'the appellate court does not retry the facts, reweigh . . . the evidence, or make its own determination of the credibility of the witnesses.'" Marshall, 47 Va. App. at 26-27 (quoting Wagner Enters. v. Brooks, 12 Va. App. 890, 894 (1991)).

"Code § 65.2-402 creates a rebuttable presumption in favor of . . . police officers that a causal connection exists between a claimant's hypertension or heart disease and his employment." Snellings v. Stafford Cty. Fire and Rescue Dep't, 62 Va. App. 568, 572 (2013). When bringing a claim under the presumption, a claimant need only prove his employment in an enumerated occupation "*and his resulting disability* from . . . [an] enumerated disease." Samartino v. Fairfax Cty. Fire and Rescue, 64 Va. App. 499, 507 (2015).

Here, it is undisputed that Kahikina was a police officer who suffered disability from June 24, 2017 to July 17, 2017. We conclude that credible evidence supports the Commission's finding that Kahikina's heart disease caused his disability in 2017. In a follow-up visit a month after the June 2017 incident, Dr. Chou listed both "coronary arteriosclerosis" and "cardiomyopathy" as problems to be addressed during the visit, concluding that Kahikina continued to have "chronic cardiac issues." Dr. Chou returned Kahikina to "light duty due to his ongoing cardiomyopathy and intermittent chest discomfort." Accordingly, the Commission did not err in determining that Kahikina was entitled to invoke the statutory presumption for heart disease.

### III. CONCLUSION

For the foregoing reasons, we hold that Kahikina's 2017 claim was timely filed and that sufficient evidence supports the Commission's conclusion that Kahikina was entitled to invoke the presumption under Code § 65.2-402(B). Accordingly, we affirm.

<u>Affirmed.</u>